[No. 5806. Decided December 6, 1905.]

W. L. GAZZAM, *Respondent,* v. IVER B. MOE *et al.,*
*Appellants.*[1]

SHIPPING—SALE OF VESSEL—APPURTENANCES—WHAT ARE. A crank shaft which had been replaced by a new one, and a new duplicate unattached rudder on a boat, do not pass under a bill of sale as "appurtenances" or "necessaries," where the vendor had another boat on which they could be used, the vendee did not know of the rudder, and they were not really necessary for the business in which the boat was engaged; since it fairly appears that they were not in the contemplation of the parties, and nothing is considered an appurtenance unless requisite to the use of the boat.

Appeal from a judgment of the superior court for King county, Albertson, J., entered May 16, 1905, upon findings in favor of the plaintiff, after a trial before the court without a jury, in an action of replevin. Reversed.

*Fred H. Peterson* and *H. C. Force,* for appellants, cited: *Newberry v. The Fashion,* 18 Fed. Cas., No. 10,143; *Burchard v. Tapscott,* 3 Duer 363; *Gullmann v. Sharp,* 30 N. Y. Supp. 1036; 2 Am. & Eng. Ency. Law (2d ed.), 522; *Wood-*

[1] Reported in 82 Pac. 912.

*hull v. Rosenthal,* 61 N. Y. 382; *Ogden v. Jennings,* 62
N. Y. 526; *Root v. Wadhams,* 107 N. Y. 384, 14 N. E. 281;
*Woods v. Russell,* 7 E. C. L. 310; *Wood v. Bell,* 5 E. & B.,
Q. B., 772, 88 E. C. L. 354; *Gale v. Laurie,* 11 E. C. L. 187;
*Coltman v. Chamberlain,* 25 Q. B. D. 328; *The Edwin Post,*
11 Fed. 602; 1 Abbott, Merchant Ships (14th ed.), 32; *Rich-
ardson v. Clark,* 15 Me. 421; *Starr v. Goodwin,* 2 Root
(Conn.) 71; Benedict, Admiralty (2d ed.), § 268; *The Alex-
ander,* 1 W. Robinson, Admiralty, 346, 361; *Gilbert etc. Co.
v. Roach,* 2 Fed. 393; *Forrest v. Vanderbilt,* 107 Fed. 734,
52 L. R. A. 473.

*Allen, Allen & Stratton,* for respondent, cited: *Thomas v.
Owen,* 20 Q. B. D. 225; *Hall v. Benner,* 1 Penr. & W. 402,
21 Am. Dec. 394, citing Shepard's Touchstone 89; *Missouri
Pac. R. Co. v. Maffitt,* 94 Mo. 56, 6 S. W. 600; *James v.
Plant,* 31 E. C. L. 170; *Commonwealth v. Curley,* 101 Mass.
24; *Sparks v. Hess,* 15 Cal. 186; *Kenney v. Apgar,* 93 N. Y.
539; *Bishop v. Bishop,* 11 N. Y. 123, 62 Am. Dec. 68;
2 Bouvier Dic., Title "Ship"; 25 Am. & Eng. Ency. Law,
851; *Gale v. Laurie,* 11 E. C. L. 187; *Webster v. Seekamp,*
6 E. C. L. 352; *The Rega,* L. R. Adm. & Eccl. Cases
(1869-72), p. 516.

DUNBAR, J.—The plaintiff purchased the steamer "Re-
liance" from defendants, and took a bill of sale for her, dated
March 1, 1905. Prior to this date, he held an option for
such purchase, dated February 13, 1905. This action is for
the recovery of the crank shaft and rudder, of the agreed
value of $700.

At the time of the sale, neither of the articles in dispute
was attached to the boat, but at the time the option was se-
cured the crank shaft was on the boat, and was seen there by
the plaintiff. The plaintiff testifies that he did not see the
rudder, and did not know that it existed until after he had
purchased the boat. It is alleged that the rudder had been

made for the steamer Reliance prior to the sale, but had not been placed in the boat. It appears that the crank shaft had been removed from the boat some two years before the sale, and a new crank shaft had been put in its place. It appears from the testimony that the rudder was made from a measurement of the rudder on the steamer Reliance, but it also appears that both the rudder and the crank shaft in dispute could be used in other boats. The defendants were also the owners and operators of another boat. The judgment was for the plaintiff for the property, of the admitted value of $700. From this judgment this appeal is prosecuted.

The essential part of the bill of sale is as follows:

"Sold unto said W. L. Gazzam . . . the whole of the said screw steamer or vessel together with the whole of the masts, sails, boats, anchors, cables, tackle, furniture and all other necessaries thereunto appertaining and belonging."

And the habendum clause is, "To have and to hold the said screw steamer Reliance and appurtenances thereunto belonging" unto said Gazzam. There is some contention by appellants that, inasmuch as the word "appurtenances" is used only in the habendum clause and not in the granting clause, the construction of the article must be simply upon the word "necessaries;" but this is too technical a construction, if indeed there is any difference between the words "furniture and all other necessaries thereunto appertaining," and the word "appurtenances." But construing this bill of sale with reference to all its provisions, aided by the testimony in the case, which is practically undisputed, we think the court erred in coming to the conclusion that the crank shaft and rudder in controversy were a part of the equipment of said steamer. This is found as a fact by the court, but in reality it is a conclusion of law, for whether these articles were a part of the equipment of the steamer depends upon the facts proven in the case.

The first case relied upon by the respondent is *Newberry v. The Fashion,* Fed. Cas. No. 10,143, where it was held

that, where one sells a steamboat with all appurtenances, etc., and prior to the sale the owner had procured a new ash-pan, for the boiler, which had been delivered to the owner but was not placed on board of the boat, the ash-pan passed under the bill of sale as appurtenant to the boat. And, at first glance, this case seems to render support to respondent's contention. But a particular examination of the case convinces us that it was decided upon an entirely different principle from the one at bar, and really has no application to it. It appears in that case that the old ash-pan was worn out and rendered the navigation of the vessel unsafe; that the new ash-pan was delivered at the dock during the winter after the navigation had closed, and The Fashion was in dock for the winter; that it fitted the vessel for which it was made, and that the old one was unfit for service, and of no value but as old iron. In such a case as that, we think that the court correctly concluded that the new ash-pan was a part of the tackle of the boat, and an appurtenance thereto. Certainly, if the old one was worn out, the new one was a necessary attachment to the boat under any theory. It was made for the boat; it was to take the place of one that was not fit for further service, and which was of no value whatever, as an ash-pan at least, and was intended to be henceforth used on The Fashion. But in this case, while the evidence shows that the rudder was made from a measurement of the old rudder on the Reliance, it also shows that it could be used on any other boat, that the owners had another boat, and that the rudder which was already in use on the Reliance was a good rudder, serviceable for the business in which the Reliance was engaged. So far as the crank shaft is concerned, it is entirely outside of the theory of the case just cited. In this case it is not a contention over an alleged new appurtenance, but over an old one which had been displaced by a new one, and had been displaced for the long period of two years.

Another case cited is *The Alexander,* 1 Dodson (Eng. Admr. Rep.) 278, where a consignee of a cargo advancing

money for the necessary repairs of a ship had taken a bond of hypothecation; *held,* that the warrant of the court would extend to the sails and rigging taken on shore for the purpose of safe custody, as well as to the ship itself. The court, in discussing that proposition, says:

"The only question that remains is, that which relates to the sails and rigging; and these, it is said, are detached from the ship, and not within the jurisdiction of the court. But how are they detached? Why, merely for the purpose of safe custody, and with the view of being returned to the ship when she goes out upon any new adventure, in conformity to what is stated to be the usual custom at the port of Liverpool. I cannot think that they are so detached, in a legal sense, as to prevent the warrant from extending to them as well as to the ship itself."

The case does not seem, in any essential, to be applicable to the case in point, where it is conceded that neither of the alleged appurtenances sued for was necessary for the use of the ship in the prosecution of its ordinary business.

In *Woods v. Russell,* 7 Eng. Com. Law Rep. 310, it was held that the rudder and cordage, which had been removed from a ship, were to be considered as parts of the ship. But it will also be seen from an examination of the opinion in that case that the decision was rendered for reasons that could not apply here, the court saying:

"And as to the rudder and cordage, as they were bought by Paton specifically for this ship, though they were not actually attached to it at the time his act of bankruptcy was committed, they seem to us to stand upon the same footing with the ship, and that, if the defendant was entitled to take the ship, he was also entitled to take the rudder and cordage as parts thereof."

As we have indicated, the crank shaft in this case was not made for the ship—at least, it had been detached from the ship and another crank shaft which had been made especially for the ship had been substituted—and the use of the rudder was equally as applicable to other ships as to the Reliance.

But as showing the construction that was placed upon this case by the same court, several years afterwards, in *Wood v. Bell*, 6 Ellis & Black. 355, it was held that loose engines and materials were not appurtenances to the ship, the court saying:

"But I do not think that, as the court below seems to have held without much consideration, the unfixed materials destined for the ship did pass. They do not appear to have been circumstanced exactly as the rudder and cordage were in *Woods v. Russell* . . . where they had become, it seems, a part of the ship. Here they are merely provided for the ship. If the circumstances in *Woods v. Russell* were the same as here, I should doubt whether the decision in that case was right. . . . The question is, What is the ship? not, What is meant for the ship? I think those things pass which have been fitted to the ship, and have once formed part of her, as, for instance, a door hung upon hinges, although afterwards removed for convenience. I do not think that the circumstance that materials have been fitted and intended for the ship makes them part of the ship."

It seems to us that the only rule that can be laid down in a case of this kind is that only those things will be considered appurtenances and necessaries to a ship which are really necessary to it in carrying on its accepted business, and that there is no implied warranty that duplicates shall be furnished. If simply because the crank shaft in this case had once belonged to the ship, and had been used by it as a part of its machinery, the respondent or purchaser would be entitled to it when another new and better crank shaft had been substituted, all the crank shafts which had ever been in use in the ship would have to answer to his demands. It might reasonably be that the contemplation of the right to dispose of the old appurtenances to a boat was the determining cause in purchasing the new, the value of the old diminishing *pro tanto* the expense of the new. Certainly under such circumstances, it would be inequitable to deprive the owner of the value of the old machinery. That the owner

had not yet disposed of it at the time he sold the boat does not in any manner change the equities.

In *Burchard v. Tapscott,* 10 N. Y. Sup. Ct. 363, it was held that a bill of sale conveying a vessel with her masts, bowsprit, sails, boats, anchors, cables, and all other necessaries thereto appertaining and belonging, does not pass the ballast which is on board the vessel at the time of the sale; movable ballast, whether it consist of iron, stone, or any other substance, not being a necessary appurtenance to the ship.

It is said by Mr. Parsons, in his work on Shipping and Admiralty, at page 79, under the title of "What are Appurtenances of a Ship," that it would seem to be deducible from the cases that nothing is to be considered an appurtenance of a ship unless requisite to its proper use. And in Abbott's Merchant Ships and Seamen, after a review of the cases, it is said, on page 34: "The result of the decisions seems to be that, under the word appurtenances, as used in a bill of sale, everything belonging to the ship, which is necessary for her as a ship, passes, . . . " An appurtenance has been defined as a thing belonging to another thing as principal, and which passes as incident to the principal thing. However, a discussion of the definition of the word "appurtenance" is really not material, because those things which are incident to the principal thing would pass by the sale of the principal thing, whether the word "appurtenance" was used or not; nothing is added by its use, or lost by its omission.

In all the cases which we have been able to find, there is none which we think would sustain the judgment of the court in this case. It seems to us that, both from the testimony and the bill of sale, these articles were not within the contemplation of the parties when the sale was made and, most certainly, the boat having an efficient rudder and an efficient crank shaft, they were not necessaries. If the purchaser should be entitled to the duplicates of the machinery without special mention in the bill of sale, by the same reasoning he would be entitled to triplicates, or any number of the

articles that the owner of the vessel might see fit to have on hand. Whether these duplicates or triplicates would be in existence depends largely upon the temperament of the owner as to whether he was an extremely cautious man, or a man inclined to take risks. One man might be willing to start out on a voyage with one rudder or one crank shaft. Another one, more cautious, might think it would be necessary to have two on hand. Another one, still more apprehensive, three or more. Or certain portions of the machinery of the boat might be bought by wholesale, the operator thinking that in the course of a lifetime he might have use for them on the boat that he was then operating, or some other boat which he might afterwards possess. If the rule announced by the court should be sustained, everything that had belonged to the boat prior to the sale could be claimed and obtained by the purchaser. We think this contention cannot be sustained upon either reason or authority.

The judgment will be reversed, and the cause remanded, with instructions to find for the defendants in the action below.

MOUNT, C. J., HADLEY, FULLERTON, RUDKIN, CROW, and ROOT, JJ., concur.